# STATE OF MICHIGAN

# COURT OF APPEALS

CAPITAL ONE, N.A.,

      Plaintiff-Appellant,

v

STATE TREASURER, STATE OF MICHIGAN, and DEPARTMENT OF TREASURY,

      Defendants-Appellees.

UNPUBLISHED
August 14, 2018

No. 340635
Court of Claims
LC No. 16-000201-MT

Before: MURPHY, P.J., and GLEICHER and LETICA, JJ.

PER CURIAM.

The Court of Claims summarily dismissed Capital One's challenge to the denial of its request for a sales tax refund on "bad debt" by the State Treasurer, State of Michigan, and Department of Treasury (defendants). Although the Court of Claims erroneously determined that Capital One presented invalid election forms designating it as the party entitled to claim a deduction and erroneously interpreted the exclusion of repossessed property from the definition of "bad debt," the court properly dismissed the complaint because Capital One failed to produce supporting evidence requested by defendants. We affirm.

## I. BACKGROUND

In May 2012, Capital One purchased approximately $30 billion in credit card loans from HSBC Bank of Nevada, N.A., including HSBC's private label credit card (PLCC) portfolio. A PLCC is a store-branded credit card that can only be used at that retailer, like a Best Buy or Kohl's charge. See MCL 205.54i(1)(d). When a customer makes a purchase using a PLLC, he or she finances both the cost of the item and the sales tax. The lender does not submit the sales tax to the state piecemeal as the debt is repaid, but upfront when the purchase is made.

When a customer defaults wholly or in part on his or her credit card debt and collection efforts fail, Capital One determines the debt to be worthless and uncollectible, or "bad debt." Capital One can then claim bad debt deductions on its federal and state income tax filings. On September 27, 2013, Capital One submitted a letter to defendants requesting a refund pursuant to MCL 205.54i "for the period of October 1, 2009 through June 30, 2013 in the amount of

-1-

$8,691,658.20 relating to the pro rata portion of sales tax relating to unpaid balance of worthless accounts which have been charged off for federal income tax purposes."[1]

Defendants did not deny Capital One's refund request, but asked for "[d]ocumentation . . . to substantiate how [Capital One] arrived at the amount of [its] request" pursuant to MCL 205.54i(4), which provides, in relevant part, "Any claim for a bad debt deduction under this section shall be supported by that evidence required by the department." Specifically, defendants requested documentation "to substantiate the account receivable has been found worthless and has been written off for the . . . years in question" and proof that the subject cards were PLCCs and not dual purpose cards that could be used at other retailers. Defendants required "[e]vidence that the tax was paid on the original taxable transaction." This could be provided through "a sampling of customer account statements." Defendants further advised that the "statements should detail all items purchased during the period." Finally, defendants noted that bad debt does not include repossessed property. See MCL 205.54i(1)(a).[2] Accordingly, defendants directed Capital One "to subtract repossessed property" from its refund calculation.

Capital One provided a large amount of information in response to defendants' request, but did not provide statements detailing each item purchased in its sampling of customer accounts. Moreover, defendants rejected "election forms" designating Capital One as the proper party to assert the bad debt deduction that were signed only after the customer had defaulted on the debt and the lender had charged off the account. Such election forms are required by MCL 205.54i(3), which provides:

After September 30, 2009, if a taxpayer who reported the tax and a lender execute and maintain a written election designating which party may claim the deduction, a claimant is entitled to a deduction or refund of the tax related to a sale at retail that was previously reported and paid if all of the following conditions are met:

(a) No deduction or refund was previously claimed or allowed on any portion of the account receivable.

---

[1] To "charge off" means that "the creditor has given up on trying to collect an unpaid debt" and has notified the credit bureaus to add this negative mark on the customer's credit report. See < https://www.experian.com/blogs/ask-experian/category/credit-advice/report-advice/charge-off/> (accessed August 3, 2018).

[2] MCL 205.54i(1)(a) defines bad debt, in relevant part, as:

any portion of a debt that is related to a sale at retail taxable under this act for which gross proceeds are not otherwise deductible or excludable and that is eligible to be claimed, or could be eligible to be claimed if the taxpayer kept accounts on an accrual basis, as a deduction pursuant to section 166 of the internal revenue code, 26 USC 166. A bad debt shall not include . . . repossessed property.

(b) The account receivable has been found worthless and written off by the taxpayer that made the sale or the lender on or after September 30, 2009.

As a result, defendants authorized a refund of only $6,600.46.

Capital One filed suit in the Court of Claims seeking to recover its full sales tax refund request. After discovery, the parties filed cross-motions for summary disposition. Capital One asserted that the plain language of MCL 205.54i did not require election forms to be executed before the bad debts were charged off as uncollectible and allowed for partial recovery on repossessed property, and that defendants' request for detailed statements including all items purchased was improper. Defendants, on the other hand, contended that the statutory definition of "bad debt" excluded repossessed property, that Capital One failed to prove it actually paid sales tax on any of the accounts at issue, and that its election forms were insufficient. The circuit court agreed with defendants that Capital One's written elections were insufficient, that Capital One failed to submit sufficient evidence to show actual sales tax paid, and that all repossessed property was excluded from the definition of bad debt. The court therefore dismissed Capital One's complaint.

## II. STANDARDS OF REVIEW

We review de novo a lower court's resolution of a summary disposition motion. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013). "A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim," and we must review the evidence in favoring of the nonmoving party to determine if it created a genuine issue of material fact for the factfinder's review. *Id*. (quotation marks and citations omitted). We also review de novo a trial court's interpretation of a statute. *Id*. at 140.

## III. SUFFICIENCY OF ELECTIONS FORMS

Capital One continues to contend that its election forms were valid and supported its sales tax refund request. Capital One concedes that the subject election forms were not executed until after it or HSBC charged off the bad debt. The Michigan Supreme Court recently considered this issue in *Ally Fin Inc v State Treasurer*, ___ Mich ___; ___ NW2d ___ (Docket Nos. 154668, 154669, and 154670, decided July 20, 2018), and determined that belatedly executed election forms are sufficient under the statute. *Id*., slip op at 22.

*Ally*, slip op at 6, explained:

> MCL 205.54i permits retailers and lenders to seek a refund for sales taxes paid on a "bad debt," as defined by the statute. If lenders such as plaintiffs seek the tax refund, they must provide a written election form, specifying that they, rather than the taxpayer, may claim the refund. The statute further provides that any claim "shall be supported by that evidence required by the department." [Citations omitted.]

In relation to election forms, the Court explained:

Under MCL 205.54i, two entities can potentially claim a bad-debt refund—the retailer that remitted the sales tax to the Department or the lender holding the account receivable. The statute requires that the party seeking a tax refund for a bad debt must provide the Department with a written election document designating whether the retailer or the lender may claim the refund. MCL 205.54i(3) provides:

> After September 30, 2009, if a taxpayer who reported the tax and a lender execute and maintain a written election designating which party may claim the deduction, a claimant is entitled to a deduction or refund of the tax related to a sale at retail that was previously reported and paid if all of the following conditions are met:
>
> (a) No deduction or refund was previously claimed or allowed on any portion of the account receivable.
>
> (b) The account receivable has been found worthless and written off by the taxpayer that made the sale or the lender on or after September 30, 2009. *Ally*, slip op at 20.]

Here, just as in *Ally*, slip op at 21, defendants contended that Capital One did not "execute and *maintain*" the written election as the debts were charged off as uncollectible years before the forms were signed. To explain its decision that charged-off debts were still "maintained," the Supreme Court in *Ally*, slip op at 21-22, explained:

> Some background on when and how accounts must be written off is helpful in addressing this issue. In order to claim a bad-debt deduction or refund under the statute, the debt must have been charged off as uncollectible in the records of the entity claiming the deduction or refund. MCL 205.54i(2) provides:
>
> In computing the amount of tax levied under this act for any month, a taxpayer may deduct the amount of bad debts from his or her gross proceeds used for the computation of the tax. *The amount of gross proceeds deducted must be charged off as uncollectible on the books and records of the taxpayer* at the time the debt becomes worthless and deducted on the return for the period during which the bad debt is written off as uncollectible in the claimant's books and records and must be eligible to be deducted for federal income tax purposes.

A write-off is simply an internal recognition by a lender that an account is worthless after attempts at collection have failed. As the Supreme Court of Wisconsin has explained, "When a lending institution 'writes off' a 'bad debt,' it is merely indicating that the debt is uncollectible. That is, it is no longer an asset of the institution. A 'write off' does not mean that the institution has forgiven the debt or that the debt is not still owing." [*Mitchell Bank v Schanke*, 268 Wis 2d 571, 582 n 7; 2004 WI 13; 676 NW2d 849 (2004).]

Our Legislature has recognized that the debt is still owing—and may be collected—after it is written off and has required taxpayers to repay the amount deducted as bad debt on such amounts. Because written-off accounts still continue to be collectible and are only deemed worthless for tax computation and accounting purposes, the Court of Appeals erred by holding that Ally's previously written-off accounts were not "currently existing" at the time that the election forms were executed. [Emphasis in original.]

*Ally* is directly on point and negates defendants' defense of their denial of Capital One's refund in this regard. Accordingly, the Court of Claims erred in ruling that Capital One's election forms were invalid. They were valid and supported Capital One's refund claim.

## IV. EVIDENTIARY SUPPORT

Capital One further challenges the Court of Claims' determination that defendants properly directed it to produce documentation to show actual sales tax paid. In filing the requested documentation, Capital One provided a "taxable percentage" calculation to determine the sales tax it and its predecessor had paid,[3] a method Capital One employs in several other states. Citing MCL 205.54i(4) ("[a]ny claim for a bad debt deduction under this section shall be supported by that evidence required by the department"), the Court of Claims concluded that defendants had discretion to request such documents. This ruling is supported by *Ally*.

In *Ally*, slip op at 4-5, the Department instructed the taxpayers, companies that financed vehicle purchases through installment contracts, to present "RD-108 forms, which dealers submit to the Secretary of State along with the sales tax due in exchange for a vehicle title and a validated copy of the form." The Supreme Court noted that the Department is "given discretion by the bad-debt statute to determine the evidence required for a party's claim for a deduction or refund," and that court must uphold the Department's exercise of that discretion "if supported by a rational basis." *Id*. at 18.

Defendants requested Capital One to provide "a sampling of customer account statements" that "should detail all items purchased during the period." Instead, Capital One provided spreadsheets showing full account histories for a sample of 50 accounts and a spreadsheet with basic information about all accounts included in the refund claim. Capital One readily admits that these documents did not detail all items purchased as directed. But, Capital One argues, defendants' request was unreasonable. Capital One had available to it the requested information and we discern no ground to conclude that defendants acted outside of their discretion. The Court of Claims, therefore, did not err in dismissing Capital One's complaint on this ground.

---

[3] Capital One describes that a "taxable percentage" is an estimate of sales tax paid, calculated by reviewing all items purchased on an account and factoring out a proportion of the purchases to account for nontaxable sales.

## V. REPOSSESSED PROPERTY

Finally, Capital One insists that it may recoup sales tax paid on deficiencies after the sale of repossessed property. This issue was resolved in *Ally* in favor of Capital One's position.

The Court in *Ally*, slip op at 9-17, extensively analyzed the language employed in MCL 205.54i(1)(a)'s definition of "bad debt," as well the definition of such debt under 26 USC 166. The Court noted that that the statute excluded "repossessed property" from the definition. *Ally*, slip op at 10. The plaintiff taxpayers in *Ally* campaigned for an interpretation "refer[ring] to the value of the repossessed property"; the Department, on the other hand, interpreted the statute "as referring to the entire value of the account, i.e., the value of the account before it was repossessed." *Id*. Under the taxpayers' definition, "the uncollectible amount not recouped from the sale of the property would remain a refundable 'bad debt,' " while under the Department's definition, it would not. *Id*. at 10-11.

The Court held in favor of the taxpayers. In doing so, it reasoned that the Department's interpretation would "impose a sales tax on consideration that later became worthless—it would tax uncollectible debt," an unreasonable reading of the statutory language. *Id*. at 11. By citing only "repossessed property," the Legislature intended "only the value of the repossessed property itself is to be excluded." *Id*. By holding to the contrary, the Court of Claims erred in this case.

Although the Court of Claims erroneously determined that Capital One's election forms were invalid and that Capital One was not entitled to a refund of that portion of the sales tax paid on repossessed items that resold for less than the debt amount, Capital One is not entitled to relief. The Court of Claims correctly determined that Capital One failed to produce supporting evidence requested by defendants. Accordingly, defendants were still entitled to summary dismissal of Capital One's complaint.

We affirm.

/s/ William B. Murphy
/s/ Elizabeth L. Gleicher
/s/ Anica Letica